IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In Re: | ) | CHAPTER 13 |
| | ) | CASE NO. 18-15350 |
| Mary Russell | ) | Judge Arthur I. Harris |
| | ) | |
| | ) | **MOTION TO SELL REAL ESTATE** |
| | ) | |

*********************************************************************

Now comes the Debtor, by and through counsel, Melissa L. Resar, and respectfully requests this Court to grant the Motion to Sell Real Estate located at 14618 Strathmore Avenue, East Cleveland, OH 44112.

Debtor filed for relief under Chapter 13 of the bankruptcy code on September 4, 2018. Schedule A/B of the petition lists the aforementioned property as an asset. There is no mortgage against however, there are delinquent property taxes owed to Cuyahoga County. The confirmed plan surrenders this property in Part 3.5. Debtor now requests the Court's permission to sell this property.

The purchase agreement for the property states a sale price of $18,500.00. The county has valued the property at $25,100.00. Debtor believes the purchase price is fair due to the current condition of the property, the current economic climate, and the market values of properties in the area.

The Debtor is seeking permission to sell the home to a buyer in the ordinary course. Debtor has no previous relationship with this buyer.

The breakdown of the sales proceeds are as follows: The contract sales price is $18,500.00 from which the Debtor shall have to pay selling costs and the existing property tax liability of $13,142.08.

Attached as Exhibit "A" is the purchase agreement, and Exhibit "B" is the current property tax bill. Debtor believes the sale of this property is in the best interest of all interested parties. If granted the Debtor shall no longer be responsible for any additional taxes or the upkeep of the property. Further, Cuyahoga County shall be paid the outstanding property tax debt and will not have to incur the cost of a tax foreclosure.

Debtor prays this Motion is granted and she is permitted to sell the real estate.

Respectfully Submitted,

/s/Alexander V. Sarady
Alexander V. Sarady (0075500)
Rauser & Associates
Attorney for Debtors
614 W. Superior Avenue, Suite 950
Cleveland, Ohio 44113
(216) 263-6200
asarady@ohiolegalclinic.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of March, 2019 a true and correct copy of this Motion to Sell Real Estate was served:

Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

Alexander V. Sarady, on behalf of Debtor, at asarady@ohiolegalclinic.com

Lauren A. Helbling, on behalf of the Trustee, at ch13trustee@ch13cleve.com

And by regular U.S. Mail, postage prepaid, on:

Mary Russell, Debtor at 12725 Iroquois Avenue, Cleveland, OH 44108

/s/Alexander V. Sarady
Alexander V. Sarady (0075500)
Rauser & Associates
Attorney for Debtor
614 W. Superior Avenue, Suite 950
Cleveland, Ohio 44113
(216) 263-6200




CENTURY 21 Premiere Properties
31100 Pinetree Road, Suite #220
Pepper Pike, OH 44124
Office: (216) 455-7677   Fax: (216) 464-7679
www.clevelandpremiereproperties.com

## PURCHASE AGREEMENT
## OFFER, RECEIPT AND ACCEPTANCE

1. **BUYER** The undersigned Danielle Morris Managing Member for Rehab QueenOhio LLC and Salina Jones offers to buy the
2. **PROPERTY** located at 14618 Strathmore ave
3. City East Cleveland                                                                                  Ohio, Zip 44112
4. Permanent Parcel No. 671-11-150             , and further described as being:
5. 3 WINDERMERE#3 0642 ALL

6. The property, which BUYER accepts in its "AS IS" PRESENT PHYSICAL CONDITION, shall include the land, all
7. appurtenant rights, privileges and easements, and all buildings and fixtures, including such of the following as are
8. now on the property: all electrical, heating, plumbing and bathroom fixtures; all window and door shades, blinds,
9. awnings, screens, storm windows, curtain and drapery fixtures; all landscaping, disposal, TV antenna, rotor and
10. control unit, smoke detectors, garage door opener(s) and _____ controls; all permanently attached carpeting.
11. The following items shall also remain: ☐ satellite dish; ☐ range and oven; ☐ microwave; ☐ kitchen refrigerator;
12. ☐ dishwasher; ☐ washer; ☐ dryer; ☐ radiator covers; ☐ window air conditioner; ☐ central air conditioner; ☐ gas
13. grill; ☐ fire place tools; ☐ screen; ☐ glass doors and glass ☐ grate; ☐ all existing window treatments; ☐ ceiling fan(s);
14. ☐ wood burner stove inserts; ☐ gas logs, and ☐ water softener. Also included: _____

15. "Subject to review by Seller's Attorney

16. NOT Included:

17. Seller to pay for, apply for and do Point of Sale Inspection. Buyer to assume all violations;

18. **SECONDARY OFFER** This ☐ is  ☒ is not  a secondary offer. This secondary offer, if applicable, will become a
19. primary offer upon BUYER's receipt of a signed copy of the release of the primary offer on or before
20. _____ (date). BUYER shall have the right to terminate this secondary offer at any time prior to
21. BUYER's receipt of said copy of the release of the primary offer by delivering written notice to the SELLER or the
22. SELLER's agent. BUYER shall deposit earnest money within four (4) days of becoming the primary offer.

23. **PRICE** BUYER shall pay the sum of                                 $ 18,500
24. Payable as follows:
25. Earnest money paid to Broker will be deposited in a non-
26. interest bearing trust account and credited against
27. purchase price.                                                       $ 1,000
28. ☐ Check to be deposited immediately upon the
29. formation of a binding AGREEMENT, as defined
30. below on lines 231-238
31. ☐ Note to be redeemed within Four (4) day's after
32. formation of a binding AGREEMENT, as defined
33. below on lines 231-238.
34. Cash to be deposited in escrow                                        $

35. Mortgage loan to be obtained by BUYER                                 $

36. ☐ CONVENTIONAL, ☐ FHA, ☐ VA, ☒ OTHER cash
37.

38. **FINANCING** BUYER shall make a written application for the above mortgage loan within _____ days
39. after acceptance and shall obtain a commitment for that loan on or about _____ If,
40. despite BUYER's good faith efforts, that commitment has not been obtained, then this AGREEMENT shall be null and void.

SELLER'S INITIALS AND DATE [initials 3/8/19]   BUYER'S INITIALS AND DATE [DMM 02/25/19]

Approved by CABOR, LoCAR, GeCAR, Medina BOR and the Cuyahoga County Bar Association Revised May 1, 2000         © Form 100

Exhibit "A"

PROPERTY ADDRESS: 14618 Strathmore ave, East Cleveland, OH 44112

41. Upon signing of a mutual release by SELLER and BUYER, the earnest money deposit shall be returned
42. to the BUYER without any further liability of either party to the other or to Broker and their agents.
43. NOTE: In the event of a dispute between SELLER and BUYER over the return or forfeiture of earnest money held
44. in escrow by a Broker, the Broker is required by State law to retain said funds in the Broker's trust or escrow
45. account until a written release from the parties consenting to its disposition has been obtained or until
46. disbursement is ordered by a court of competent jurisdiction, or after a period of two (2) years has passed,
47. the earnest money shall be returned to BUYER.

48. CLOSING All funds and documents necessary for the completion of this transaction shall be placed in escrow
49. with the lending institution or escrow company on or before 03/20/2019 _____, and title shall be
50. transferred on or about 03/20/2019.

51. POSSESSION SELLER shall deliver possession to BUYER on 03/20/2019 (date) at 5:00 (time)
52. ☐ AM ☑ PM, provided the title has transferred, subject to BUYER's rights. If any, the premises may be occupied
53. by the SELLER free for _____ ( ) days. Additional _____ days at a rate of
54. $ _____ per day. Payment and collection of fees for use and occupancy after transfer of title are the
55. sole responsibility of SELLER and BUYER.

56. TITLE SELLER shall convey a marketable title to BUYER by general warranty deed and/or fiduciary deed, if
57. required, with dower rights released, free and clear of all liens and encumbrances whatsoever, except; a) any
58. mortgage assumed by BUYER; b) such restrictions, conditions, easements (however created) and
59. encroachments as do not materially adversely affect the use or value of the property; c) zoning ordinances, if any,
60. and; d) taxes and assessments, both general and special, not yet due and payable. SELLER shall furnish an
61. Owner's Fee Policy of Title Insurance from Fairmount title Agency
62. (title company – if BUYER has a preference) in the amount of the purchase price with cost of the insuring
63. premium split equally between SELLER and BUYER. If the property is torrenized, SELLER shall furnish an
64. Owner's Duplicate Certificate of Title, and a United States Court Search and Tax Search. SELLER shall have
65. thirty (30) days after notice to remove title defects. If unable to do so, BUYER may either a) accept Title subject to
66. each defect without any reduction in the purchase price or b) terminate this AGREEMENT, in which case neither
67. BUYER, SELLER no any Realtor(s) ® shall have any further liability to each other, and both BUYER and
68. SELLER agree to sign a mutual release, whereupon the Broker shall return the earnest money to BUYER.

69. PRORATIONS General taxes, annual maintenance fees, subdivision charges, special assessments, city and
70. county charges and tenant's rents shall be prorated as of the date of the title transfer. Taxes and assessments
71. shall be prorated based upon the latest available tax duplicate. However, if the tax duplicate is not yet available or
72. the improved land is currently valued as land only, taxes and assessments shall be prorated based upon 35% of
73. the selling price times the millage rate. The escrow agent is instructed to contact the local governmental taxing
74. authority, verify the correct tax value of the property as of the date of title transfer and pay the current taxes due to
75. the date of the title transfer. If the property being transferred is new construction and recently completed or in the
76. process of completion at the time the AGREEMENT was signed by the parties, the escrow agent is instructed to
77. make a good faith estimate of the taxes to be owed on the value of the improved property to the date of title
78. transfer and reserve sufficient funds in escrow from SELLER's net proceeds to pay those taxes when they
79. become due and payable after title transfer. The escrow agent is instructed to release the balance of the funds on
80. reserve once they receive notice from the local county auditor that the taxes on the land and improvements have
81. been paid in full to the date of title transfer. BUYER acknowledges that the latest available tax duplicate may not
82. reflect the accurate amount of taxes and assessments that will be owed. SELLER agrees to reimburse BUYER
83. directly outside of escrow for any increase in valuation and the cost of all passes or levied, but not yet certified,
84. taxes and assessments, if any, prorated to the date of title transfer. SELLER is not aware of any proposed taxes
85. or assessments, public or private, except the following :

86. _____

87. In the event the property shall be deemed subject to any agricultural tax recoupment (C.A.U.V.),
88. ☐ BUYER ☑ SELLER agrees to pay the amount of such recoupment.

89. CHARGES/ESCROW INSTRUCTIONS This AGREEMENT shall be used as escrow instructions subject to the
90. Escrow Agent's usual conditions of acceptance. SELLER shall pay the following costs through escrow: a) real
91. estate transfer tax; b) any amount required to discharge any mortgage, lien or incumbrance not assumed by
92. BUYER; c) title exam and one-half the cost of insuring premium for Owners Fee Policy of Title Insurance; d)
93. prorations due BUYER; e) Broker's commission; f) one-half of the escrow fee (unless VA/FHA regulations

_[signature] 3/8/19_          _[signature DMM 03/25/19]_
SELLER'S INITIALS AND DATE     BUYER'S INITIALS AND DATE

Approved by CABOR, LoCAR, GeCAR, Medina BOR and the Cuyahoga County Bar Association Revised May 1, 2000       © Form 100

PROPERTY ADDRESS 14618 Strathmore ave, East Cleveland, OH 44112

94. prohibit payment of escrow fees by BUYER in which case SELLER shall pay the entire escrow fee) and; g) The
95. SELLER, if listed with CENTURY 21 Premiere Properties, agrees to pay at escrow, a $395.00 fixed fee commission.

96. SELLER shall pay directly all utility charges to the date of title transfer or date of possession
97. whichever is later. The escrow agent shall withhold $0 _____ from the proceeds due SELLER for
98. the SELLER's final water and sewer bills. Tenant security deposits, if any, shall be credited in escrow to the
99. BUYER.

100. BUYER shall pay the following through escrow (unless prohibited by VA/FHA regulations); a) one-half of the
101. escrow fee; b) one-half the cost of insuring premiums for Owners Fee Policy of Title Insurance; c) all recording
102. fees for the deed and any mortgage, and; d) the BUYER agrees to pay at escrow, to CENTURY 21 Premiere
103. Properties, a $395.00 fixed fee commission. BUYER shall secure new insurance on the property.

104. Buyer acknowledges the availability of a LIMITED HOME WARRANTY PROGRAM with a deductible paid by
105. BUYER which ☐ will ☑ will not be provided at a cost of $_____ charged to ☐ SELLER ☐ BUYER from
106. escrow at closing. SELLER and BUYER acknowledge that this LIMITED HOME WARRANTY PROGRAM will not
107. cover any pre-existing defects in the property. Broker may receive a fee from the home warranty provider.

108. ☑ The SELLER (s) hereby authorize and instruct the escrow agent to send a copy of their fully signed HUD1
109. Settlement Statement to the Brokers listed on this AGREEMENT promptly after closing.

110. ☑ The BUYER (s) herby authorize and instruct the escrow agent to send a copy of their fully signed HUD 1
111. Settlement Statement to the Brokers listed on this AGREEMENT promptly after closing.

112. **INSPECTION** This AGREEMENT shall be subject to the following inspection(s) by a qualified inspector of
113. BUYER's choice within the specified number of days from formation of binding AGREEMENT. BUYER assumes
114. sole responsibility to select and retain a qualified inspector for each requested inspection and releases Broker of
115. any and all liability regarding the selection or retention of the inspector(s). If BUYER does not elect inspections,
116. BUYER acknowledges that BUYER is acting against the advice of BUYER's agent and broker. BUYER
117. understands that all real property and improvements may contain defects and conditions that are not readily
118. apparent and which may affect a property's use or value. BUYER and SELLER agree that the REALTORS® and
119. agents do not guarantee and in no way assume responsibility for the property's condition. BUYER acknowledges
120. that it is the BUYER's own duty to exercise reasonable care to inspect and make diligent inquiry of the SELLER or
121. BUYER's inspectors regarding the condition and systems of the property.

122. INSPECTIONS REQUIRED BY ANY STATE, COUNTY, LOCAL GOVERNMENT OR FHA/VA DO NOT
123. NECESSARILY ELIMINATE THE NEED FOR THE INSPECTIONS LISTED BELOW.

124. WAIVER [DMH] _____ (initials) BUYER elects to waive each professional inspection to which BUYER has
125. not indicated "YES". Any failure by BUYER to perform any inspection indicated "YES" herein is a waiver of such
126. inspection and shall be deemed absolute acceptance of the Property by BUYER in its "AS IS" condition.

127. **Choice Inspection Expense**

128. Yes No

| | | | | BUYER's | SELLER's |
|---|---|---|---|---|---|
| 129. ☐ | ☑ | GENERAL HOME | _____ days from formation of AGREEMENT | ☐ | ☐ |
| 130. ☐ | ☐ | SEPTIC SYSTEM | _____ days from formation of AGREEMENT | ☐ | ☐ |
| 131. ☐ | ☐ | WATER POTABILITY | _____ days from formation of AGREEMENT | ☐ | ☐ |
| 132. ☐ | ☐ | WELL FLOW RATE | _____ days from formation of AGREEMENT | ☐ | ☐ |
| 133. ☐ | ☐ | RADON | _____ days from formation of AGREEMENT | ☐ | ☐ |
| 134. ☐ | ☐ | OTHER | _____ days from formation of AGREEMENT | ☐ | ☐ |

135. _____

136. After each inspection requested, BUYER shall have three (3) days to elect one of the following: a) Remove the
137. inspection contingency and accept the property in its "AS IS" PRESENT PHYSICAL CONDITION; or b) Accept
138. the property subject to SELLER agreeing to have specific items, that were either previously disclosed in writing by

SELLER'S INITIALS AND DATE     BUYER'S INITIALS AND DATE
Approved by CABOR, LoCAR, GeCAR, Medina BOR and the Cuyahoga County Bar Association Revised May 1, 2000     © Form 100

Page 3 of 6

139. the SELLER or Identified in a written Inspection report, repaired by a qualified contractor in a professional manner
140. at SELLER's expense; or c) Terminate this AGREEMENT If written Inspection report(s) identify material latent
141. defects NOT previously disclosed in writing by the SELLER and by cooperating real estate Broker.

142. If the property is accepted in its "AS IS" PRESENT PHYSICAL CONDITION, BUYER agrees to sign an
143. Amendment to Purchase AGREEMENT removing the inspection contingency and this AGREEMENT will proceed
144. in full force and effect. If the property is accepted subject to the SELLER repairing specific defects, BUYER shall
145. provide to SELLER a copy of the inspection report(s) and sign an Amendment To Purchase Agreement, removing
146. the inspection contingency and identifying the defects which are to be repaired. SELLER and BUYER shall have
147. three (3) days from SELLER's receipt of the written list of defects and the inspection report(s) to agree in writing
148. which defects, if any, will be corrected at SELLER's expense. If a written AGREEMENT is not signed by SELLER
149. and BUYER within those three (3) days, this AGREEMENT is null and void and SELLER and BUYER agree to
150. sign a mutual release. If the BUYER elects to terminate this AGREEMENT based upon newly discovered material
151. latent defects in the property, BUYER shall provide a copy of the written inspection report to the SELLER and
152. both parties agree to promptly sign a mutual release. Upon signing of a mutual release by SELLER and BUYER,
153. the earnest money deposit shall be returned to the BUYER without any further liability of either party to the other
154. or to Broker(s).

155. The BUYER and SELLER can mutually agree IN **WRITING** to extend the dates for Inspections, repairs, or to
156. exercise their right to terminate the AGREEMENT. SELLER agrees to provide reasonable access to the property
157. for BUYER to review and approve any conditions corrected by SELLER.

158. Yes No
159. ☐ ☑ PEST/WOOD DESTROYING INSECTS  An inspection of all structures on said premises shall be
160. made by a licensed inspection or exterminating agency of ☐BUYER's or ☐SELLER's choice at ☐BUYER's
161. ☐SELLER's expense and such agency's written report shall be made available to the BUYER before closing. If
162. such report shows existing infestation or damage by pests, termites or wood destroying insects, treatment of the
163. condition shall be made by a licensed exterminating agency which shall furnish a certificate of guarantee for a
164. period of at least one year in the case of termites and a certificate of guarantee for a period of at least 60 days in
165. the case of wood destroying insects. ALL REPAIRS AND TREATMENT COSTS SHALL BE PAID BY THE ☐BUYER
166. OR ☐SELLER (unless FHA/VA regulations prohibit payment of inspection by BUYER, in which case SELLER
167. shall pay the cost.) This AGREEMENT may be voided by the party paying for the repair, if it exceeds $500.00.

168. Yes No
169. ☐ ☑ LEAD BASED PAINT  BUYER shall have the right to have a risk assessment or inspection of the
170. property by a qualified inspector, for the presence of lead-based paint and/or lead based paint hazards at
171. BUYER's expense within ten (10) days after formation of a binding AGREEMENT. (Intact lead-based paint that is
172. in good condition is not necessarily a hazard. See EPA pamphlet "Protect Your Family From Lead In Your Home"
173. for more information.) In the event existing deficiencies or corrections are identified by the inspector in their
174. written report, BUYER shall have the right to terminate the AGREEMENT or request that the SELLER repair the
175. specific existing deficiencies noted on the written inspection report. In that event, BUYER agrees to immediately
176. provide the specific existing deficiencies noted on the written inspection report. In that event, BUYER agrees to
177. immediately provide SELLER with a copy of the written inspection and/or risk assessment report. Upon receipt of
178. the inspection report and BUYER's request of repairs, SELLER will have the option to either agree to correct the
179. deficiencies identified in the inspector's written report or decline to do any repairs. If SELLER elects to correct the
180. deficiencies, SELLER agrees to provide to BUYER prior to Title Transfer with a certificate from a qualified risk
181. assessor or inspector demonstrating that the deficiencies have been remedied. If the SELLER declines to correct
182. the deficiencies, BUYER may elect to terminate the AGREEMENT or accept the property in its "AS IS" condition.
183. BUYER may remove this right of inspection at any time without SELLER's consent. BUYER ☑ HAS
184. _DMM_ _____(BUYER's initials) received a copy of the EPA pamphlet entitled "PROTECT YOUR FAMILY
185. FROM LEAD IN YOUR HOME" and a copy of the "DISCLOSURE ON LEAD-BASED PAINT AND/OR LEAD-
186. BASED PAINT HAZARDS."  BUYER ☐ HAS NOT _____ _____ (BUYER'S initials) received a copy of the EPA
187. pamphlet entitled 'PROTECT YOUR FAMILY FROM LEAD IN YOUR HOME" and a copy of the "DISCLOSURE
188. ON LEAD-BASED PAINT AND/OR LEAD BASED PAINT HAZARDS  (disclosure form)," This offer is subject to
189. the SELLER completing the disclosure form and BUYER's review and approval of the information contained on
190. the disclosure form within _____ days from receipt.

191. MEGAN'S LAW  SELLER warrants that SELLER has disclosed to BUYER all notices received pursuant to Ohio's
192. sex offender law. The BUYER acknowledges that the information disclosed may no longer be accurate and

SELLER'S INITIALS AND DATE    BUYER'S INITIALS AND DATE

Approved by CABOR, LoCAR, GeCAR, Medina BOR and the Cuyahoga County Bar Association Revised May 1, 2000      © Form 100

PROPERTY ADDRESS 14618 Strathmore ave, East Cleveland, OH 44112

193. agrees to inquire with the local sheriff's office. BUYER agrees to assume the responsibility to check with the local
194. sheriff's office for additional information. BUYER will rely on BUYER's own inquiry with the local Sherriff's office as
195. to registered sex offenders in the area and will not rely on SELLER or any real estate agent involved in the
196. transaction.

197. **CONDITION OF PROPERTY** BUYER has examined the property and agrees that the property is being
198. purchased in its "AS IS PRESENT PHYSICAL CONITION including any defects disclosed by the SELLER on
199. the State of Ohio Residential Property Disclosure Form or identified by any inspections requested by either party.
200. SELLER agrees to notify BUYER in writing of any additional disclosure items that arise between the date of
201. acceptance and the date of recording of the deed. BUYER has not relied upon any representations, warranties or
202. statements about the property (including but not limited to its condition or use) unless otherwise disclosed on this
203. AGREEMENT or on the Residential Property Disclosure Form.
204. BUYER ☐ HAS [DMM 02/25/19] (BUYER's initials) received a copy of the Residential Property Disclosure
205. Form signed by SELLER on _____ (date) prior to writing this offer.
206. BUYER ☐ HAS NOT _____ (BUYER's initials) received a copy of the Residential Property
207. Disclosure Form. This offer is subject to the SELLER completing the Residential Property Disclosure Form and
208. BUYER's review and approval of the information contained on the disclosure form within _____ days from
209. receipt.

210. SELLER shall pay all costs for the repair of any gas line leak found between the street and foundation at the time
211. of transfer of utilities. SELLER agrees to comply with any and all local governmental point of sale laws and/or
212. ordinances. SELLER will promptly provide BUYER with copies of any notices received from governmental
213. agencies to inspect or correct any current building code or health violations. If applicable, BUYER and SELLER
214. shall have _____ days after receipt by BUYER of all notices to agree in writing which party will be
215. responsible for the correction of any building code or health violation(s). In the event BUYER and SELLER cannot
216. agree in writing, this AGREEMENT can be declared null and void by either party.

217. **REPRESENTATIONS AND DISCLAIMERS** BUYER acknowledges that the SELLER completed the Residential
218. Property Disclosure Form and agrees to hold the Broker(s) and their agents harmless from any misstatements or
219. errors made by the SELLER on the form. BUYER also acknowledges and agrees that the Broker(s) and their
220. agents have no obligation to verify or investigate the information provided by the SELLER on that form. BUYER
221. hereby acknowledges that any representation by SELLER or the real estate agent(s) regarding the square
222. footage of the rooms, structures or lot dimensions, homeowners fees, public and private assessments, utility bills,
223. taxes and special assessments are approximate and not guaranteed. Please list any and all verbal
224. representations made by Broker(s) or their agents that you relied upon when purchasing this property (if none,
225. write "none"). none

226. **DAMAGE** If any building or other improvements are destroyed or damaged in excess of ten percent of the
227. purchase price prior to title transfer, BUYER may either accept the insurance proceeds for said damage and
228. complete this transaction or may terminate this AGREEMENT and receive the return of all deposits made. If such
229. damage is less than ten percent of the purchase price, SELLER shall restore the property to its prior
230. condition.

231. **BINDING AGREEMENT** Upon written acceptance and then either written or verbal notice of such
232. acceptance to the last-offering party, this offer and any addenda listed below shall become a LEGALLY
233. BINDING AGREEMENT UPONBUYER AND SELLER and their heirs, executors, administrators and
234. assigns and shall represent the entire understanding of the parties regarding this transaction. All
235. counter-offers, amendments, changes or deletions to this AGREEMENT shall be in writing and be signed
236. by both BUYER and SELLER. Facsimile signatures shall be deemed binding and valid. This AGREEMENT
237. shall be used as escrow instructions subject to the Escrow Agent's usual conditions of acceptance. For
238. purposes of this AGREEMENT, "days" shall be defined as calendar days. This AGREEMENT is a legally
239. Binding contract. If you have any questions of law, consult your attorney.

240. **ADDENDA** The additional terms and conditions in the attached addenda ☐ Agency Disclosure Form

241. ☐ Residential Property Disclosure Form ☐ VA ☐ HA ☐ FHA Home Inspections Notice ☐ Condo ☐ House Sale
242. Contingency Addendum ☐ House Sale Concurrency Addendum ☐ Lead Based Paint ☐ Other _____
243. are made part of this AGREEMENT. The terms and conditions of any addenda supersede any conflicting
244. Terms in the purchase AGREEMENT.
245.

SELLER'S INITIALS AND DATE [3/8/19]     BUYER'S INITIALS AND DATE [DMM 02/25/19]

Approved by CABOR, LoCAR, GeCAR, Medina BOR and the Cuyahoga County Bar Association Revised May 1, 2000     © Form 100

PROPERTY ADDRESS 14616 Strathmore Ave, East Cleveland, OH 44112

246. *[signature] Danielle Marie Murphy, Broker for Robert Brown Ohio LLP* — dotloop verified 02/25/19 6:53 PM EST BXL8-DJCP-0268-OBMV — 31100 Pinetree Road
247. (BUYER SIGNATURE) (Street #, Street Name, City, Zip Code)

248. Salina Jones
249. (PRINT BUYER NAME) (Email Address) (Phone #)

250. _____
251. (BUYER SIGNATURE) (Street #, Street Name, City, Zip Code)

252. _____
253. (PRINT BUYER NAME) (Email Address) (Phone #)

254. **DEPOSIT RECEIPT** Receipt is hereby acknowledged of $ _____ ☐ check ☐ note, earnest money,
255. subject to terms of the above offer.

256. By: _____ Office: Century 21 Premiere Proprties  Phone: 216-455-7677  Fax: 216-464-7679

257. **ACCEPTANCE** Seller accepts the above offer and irrevocably instructs the escrow agent to pay from
258. SELLER's escrow funds a commission of _____ percent ( _____ %)
259. of the purchase price to Century 21 Premiere Proprties
260. _____ (Broker)
    31100 Pinetree Road, Suite #125, Pepper Pike, OH 44124 (Address)
261. and _____ percent ( _____ %) of the
262. purchase price to _____
263. (Broker)
    _____ (Address)
264. as the sole procuring agents in this transaction.

265. *[signature]*
266. (SELLER SIGNATURE) (ADDRESS AND ZIP CODE) (DATE)
    216     3/8/19
267.
268. (PRINT SELLER'S NAME) (PHONE NO.) (DATE)

269. MARY RUSSELL
270. (SELLER SIGNATURE) (ADDRESS AND ZIP CODE) (DATE)

271.
272. (PRINT SELLER'S NAME) (PHONE NO.) (DATE)

273. The following information is provided solely for the Multiple Listing Services' use and will be completed by the
274. Brokers or their agents and is not part of the terms of the Purchase AGREEMENT.

275. Multiple Listing Information

    Craig Lucker
276. (Listing agent name) (Listing agent license #)
277. Puppy Realty
    (Listing broker name) (Listing broker office #)
278.
279. (Selling agent name) (Selling agent license #)

280. Century 21 Premiere Properties    2002003852
281. (Selling broker name) (Selling broker #)

282. *[initials] MR  3/8/19*    *DMM 02/25/19 6:53 PM EST dotloop verified*
    SELLER'S INITIALS AND DATE    BUYER'S INITIALS AND DATE

Approved by CABOR, LoCAR, GeCAR, Medina BOR and the Cuyahoga County Bar Association Revised May 1, 2000  © Form 100
Page 6 of 6

| | | |
|---|---|---|
| Primary Owner | RUSSELL, MARY | |
| Property Address | 14618 Strathmore AVE East Cleveland, OH 44112 | |
| Tax Mailing Address | MARY BURTON 12725 IROQUOIS AVE CLEVELAND, OH 44108 | |
| Legal Description | 3 WINDERMERE#3 0642 ALL | |
| Property Class | TWO FAMILY DWELLING | |
| Parcel Number | 671-11-150 | |
| Taxset | East Cleveland | |
| Tax Year | 2018 | |

### Assessed Values
| | |
|---|---|
| Land Value | $770 |
| Building Value | $8,020 |
| Total Value | $8,790 |
| Homestead Value | $ |

### Half Year Charge Amounts
| | |
|---|---|
| Gross Tax | $598.73 |
| Less 920 Reduction | $137.64 |
| Sub Total | $461.09 |
| 10% Reduction Amount | $43.63 |
| Owner Occupancy Credit | $.00 |
| Homestead Reduction Amount | $.00 |
| Total Assessments | $63.75 |
| Half Year Net Taxes | $481.21 |

### Market Values
| | |
|---|---|
| Land Value | $2,200 |
| Building Value | $22,900 |
| Total Value | $25,100 |

### Rates
| | |
|---|---|
| Full Rate | 136.23 |
| 920 Reduction Rate | .229893 |
| Effective Rate | 104.911631 |

### Flags
| | |
|---|---|
| Owner Occupancy Credit | N |
| Homestead Reduction | N |
| Foreclosure | Y |
| Cert. Pending | N |
| Cert. Sold | N |
| Payment Plan | N |

### Escrow
| | |
|---|---|
| Escrow | N |
| Payment Amount | $.00 |

### Tax Balance Summary
| | Charges | Payments | Balance Due |
|---|---|---|---|
| | $13,167.08 | $25.00 | $13,142.08 |

### 2018 (pay in 2019) Charge and Payment Detail

**Taxset: East Cleveland**

| Charge Type | Charges | Payments | Balance Due |
|---|---|---|---|
| Prior year penalty - 2012 | $169.51 | $.00 | $169.51 |
| December interest - 2018 | $419.90 | $.00 | $419.90 |
| Prior year penalty - 2016 | $163.84 | $.00 | $163.84 |
| Prior year penalty - 2013 | $174.41 | $.00 | $174.41 |
| Prior year penalty - 2015 | $163.53 | $.00 | $163.53 |
| Prior year penalty - 2014 | $177.26 | $.00 | $177.26 |
| Prior year penalty - 2017 | $165.17 | $.00 | $165.17 |
| Prior year tax - 2015 | $1,055.08 | $.00 | $1,055.08 |
| Prior year tax - 2014 | $1,143.58 | $.00 | $1,143.58 |
| Prior year August interest - 2018 | $686.44 | $.00 | $686.44 |
| Prior year interest - 2017 | $880.38 | $.00 | $880.38 |
| Prior year interest - 2016 | $661.06 | $.00 | $661.06 |
| Prior year interest - 2012 | $44.06 | $.00 | $44.06 |
| Prior year interest - 2014 | $254.94 | $.00 | $254.94 |
| Prior year interest - 2015 | $447.32 | $.00 | $447.32 |
| Prior year interest - 2013 | $166.12 | $.00 | $166.12 |
| Prior year tax - 2017 | $1,065.66 | $.00 | $1,065.66 |
| Prior year tax - 2016 | $1,056.98 | $.00 | $1,056.98 |
| Prior year tax - 2013 | $1,125.22 | $.00 | $1,125.22 |
| Prior year tax - 2012 | $922.12 | $25.00 | $897.12 |
| DELQ BALANCE | $10,942.58 | $25.00 | $10,917.58 |
| 1st half tax | $417.46 | $.00 | $417.46 |
| 1st half penalty | $41.75 | $.00 | $41.75 |
| 1ST HALF BALANCE | $459.21 | $.00 | $459.21 |
| 2nd half tax | $417.46 | $.00 | $417.46 |
| 2ND HALF BALANCE | $417.46 | $.00 | $417.46 |

**M203254-Street Lites**

| Charge Type | Charges | Payments | Balance Due |
|---|---|---|---|
| December interest - 2018 | $9.47 | $.00 | $9.47 |
| Prior year tax - 2015 | $22.28 | $.00 | $22.28 |
| Prior year penalty - 2014 | $3.44 | $.00 | $3.44 |

*Exhibit "B"*

| | | | | |
|---|---|---|---|---|
| | Prior year penalty - 2013 | $3.44 | $.00 | $3.44 |
| | Prior year penalty - 2012 | $3.44 | $.00 | $3.44 |
| | Prior year penalty - 2017 | $3.44 | $.00 | $3.44 |
| | Prior year penalty - 2016 | $3.44 | $.00 | $3.44 |
| | Prior year penalty - 2015 | $3.44 | $.00 | $3.44 |
| | Prior year SPA fee - 2015 | $.22 | $.00 | $.22 |
| | Prior year SPA fee - 2014 | $.22 | $.00 | $.22 |
| | Prior year SPA fee - 2013 | $.22 | $.00 | $.22 |
| | Prior year SPA fee - 2012 | $.22 | $.00 | $.22 |
| | Prior year SPA fee - 2017 | $.22 | $.00 | $.22 |
| | Prior year SPA fee - 2016 | $.22 | $.00 | $.22 |
| | Prior year SPA fee interest - 2015 | $.11 | $.00 | $.11 |
| | Prior year SPA fee interest - 2013 | $.05 | $.00 | $.05 |
| | Prior year SPA fee interest - 2014 | $.07 | $.00 | $.07 |
| | Prior year SPA fee interest - 2012 | $.02 | $.00 | $.02 |
| | Prior year SPA fee interest - 2017 | $.17 | $.00 | $.17 |
| | Prior year SPA fee interest - 2016 | $.15 | $.00 | $.15 |
| | Prior year SPA fee penalty - 2014 | $.03 | $.00 | $.03 |
| | Prior year SPA fee penalty - 2013 | $.03 | $.00 | $.03 |
| | Prior year SPA fee penalty - 2012 | $.03 | $.00 | $.03 |
| | Prior year SPA fee penalty - 2017 | $.03 | $.00 | $.03 |
| | Prior year SPA fee penalty - 2015 | $.03 | $.00 | $.03 |
| | Prior year SPA fee penalty - 2016 | $.03 | $.00 | $.03 |
| | December SPA fee interest - 2018 | $.09 | $.00 | $.09 |
| | Prior year August interest - 2018 | $15.63 | $.00 | $15.63 |
| | Prior year Aug SPA fee int - 2018 | $.14 | $.00 | $.14 |
| | Prior year interest - 2015 | $12.66 | $.00 | $12.66 |
| | Prior year interest - 2013 | $5.60 | $.00 | $5.60 |
| | Prior year interest - 2014 | $8.44 | $.00 | $8.44 |
| | Prior year interest - 2012 | $2.60 | $.00 | $2.60 |
| | Prior year interest - 2017 | $19.83 | $.00 | $19.83 |
| | Prior year interest - 2016 | $17.40 | $.00 | $17.40 |
| | Prior year tax - 2014 | $22.28 | $.00 | $22.28 |
| | Prior year tax - 2013 | $22.28 | $.00 | $22.28 |
| | Prior year tax - 2012 | $22.28 | $.00 | $22.28 |
| | Prior year tax - 2017 | $22.28 | $.00 | $22.28 |
| | Prior year tax - 2016 | $22.28 | $.00 | $22.28 |
| | DELQ BALANCE | $248.25 | $.00 | $248.25 |
| M203254A-STREET LIGHTS - EAST CLEVE | | | | |
| | 1st half SPA fee | $.11 | $.00 | $.11 |
| | 1st half tax | $11.14 | $.00 | $11.14 |
| | 1st half SPA fee penalty | $.01 | $.00 | $.01 |
| | 1st half penalty | $1.11 | $.00 | $1.11 |
| | 1ST HALF BALANCE | $12.37 | $.00 | $12.37 |
| | 2nd half tax | $11.14 | $.00 | $11.14 |
| | 2nd half SPA fee | $.11 | $.00 | $.11 |
| | 2ND HALF BALANCE | $11.25 | $.00 | $11.25 |
| C100671S-SEWER MAINTENANCE | | | | |
| | Prior year penalty - 2014 | $.56 | $.00 | $.56 |
| | Prior year penalty - 2013 | $.56 | $.00 | $.56 |
| | Prior year penalty - 2012 | $.56 | $.00 | $.56 |
| | Prior year penalty - 2015 | $.56 | $.00 | $.56 |
| | Prior year penalty - 2016 | $.56 | $.00 | $.56 |
| | Prior year tax - 2016 | $3.50 | $.00 | $3.50 |
| | December interest - 2018 | $1.47 | $.00 | $1.47 |
| | Prior year penalty - 2017 | $.56 | $.00 | $.56 |
| | Prior year August interest - 2018 | $2.43 | $.00 | $2.43 |
| | Prior year interest - 2017 | $3.08 | $.00 | $3.08 |
| | Prior year interest - 2016 | $2.70 | $.00 | $2.70 |
| | Prior year interest - 2015 | $1.96 | $.00 | $1.96 |
| | Prior year interest - 2012 | $.41 | $.00 | $.41 |
| | Prior year interest - 2013 | $.87 | $.00 | $.87 |

|  |  |  |  |
|---|---:|---:|---:|
| Prior year interest - 2014 | $1.31 | $.00 | $1.31 |
| Prior year tax - 2017 | $3.50 | $.00 | $3.50 |
| Prior year tax - 2015 | $3.50 | $.00 | $3.50 |
| Prior year tax - 2013 | $3.50 | $.00 | $3.50 |
| Prior year tax - 2014 | $3.50 | $.00 | $3.50 |
| Prior year tax - 2012 | $3.50 | $.00 | $3.50 |
| DELQ BALANCE | $38.59 | $.00 | $38.59 |
| 1st half tax | $.00 | $.00 | $.00 |

**C100671-SEWER MAINTENANCE**

|  |  |  |  |
|---|---:|---:|---:|
| Prior year penalty - 2017 | $13.02 | $.00 | $13.02 |
| Prior year penalty - 2016 | $13.02 | $.00 | $13.02 |
| Prior year penalty - 2015 | $13.02 | $.00 | $13.02 |
| Prior year penalty - 2013 | $13.02 | $.00 | $13.02 |
| Prior year penalty - 2012 | $13.02 | $.00 | $13.02 |
| Prior year penalty - 2014 | $13.02 | $.00 | $13.02 |
| Prior year August interest - 2018 | $58.83 | $.00 | $58.83 |
| Prior year interest - 2017 | $74.64 | $.00 | $74.64 |
| Prior year interest - 2016 | $65.49 | $.00 | $65.49 |
| Prior year interest - 2015 | $47.67 | $.00 | $47.67 |
| Prior year interest - 2014 | $31.81 | $.00 | $31.81 |
| Prior year interest - 2012 | $9.80 | $.00 | $9.80 |
| Prior year interest - 2013 | $21.11 | $.00 | $21.11 |
| Prior year tax - 2017 | $84.00 | $.00 | $84.00 |
| Prior year tax - 2015 | $84.00 | $.00 | $84.00 |
| Prior year tax - 2013 | $84.00 | $.00 | $84.00 |
| Prior year tax - 2016 | $84.00 | $.00 | $84.00 |
| Prior year tax - 2012 | $84.00 | $.00 | $84.00 |
| Prior year tax - 2014 | $84.00 | $.00 | $84.00 |
| December interest - 2018 | $35.65 | $.00 | $35.65 |
| DELQ BALANCE | $927.12 | $.00 | $927.12 |
| 1st half penalty | $5.25 | $.00 | $5.25 |
| 1st half tax | $52.50 | $.00 | $52.50 |
| 1ST HALF BALANCE | $57.75 | $.00 | $57.75 |
| 2nd half tax | $52.50 | $.00 | $52.50 |
| 2ND HALF BALANCE | $52.50 | $.00 | $52.50 |

|  | Charges | Payments | Balance Due |
|---|---:|---:|---:|
| Total Balance | **$13,167.08** | **$25.00** | **$13,142.08** |